UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMU K. JOHNSON,                              Case No. 12-13268

          Plaintiff,                     Julian Abele Cook, Jr.
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

          Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 19)

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On July 24, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Julian Abele

Cook, Jr. referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits.  (Dkt. 4).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 11, 19).

Plaintiff filed a reply on February 19, 2013.  (Dkt. 21).

B.      Administrative Proceedings

Plaintiff filed the instant claims on July 9 and July 23, 2009, alleging that he became disabled on October 7, 2008.  (Dkt. 10-2, Pg ID 51).  The claims were initially disapproved by the Commissioner on November 23, 2009.  (Dkt. 10-2, Pg ID 1).  Plaintiff requested a hearing and on July 28, 2010, plaintiff appeared with an attorney before Administrative Law Judge (ALJ) Richard L Sasena, who considered the case de novo.  In a decision dated October 15, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 51-60).  Plaintiff requested a review of this decision on November 1, 2010.  (Dkt. 10-2, Pg ID 47).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on March 19, 2012, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 41-43); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

defendant's motion for summary judgment be **GRANTED IN PART**, that the

findings of the Commissioner be **REVERSED IN PART**, and that this matter be

remanded for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 55 years of age at the time of the most recent administrative

hearing.  (Dkt. 10-5, Pg ID 147).  Plaintiff's past relevant work included work as a

mail carrier, refuse collector, and call center attendant.  (Dkt. 10-2, Pg ID 59-60).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at

step one that plaintiff had not engaged in substantial gainful activity since the

alleged onset date.  (Dkt. 10-2, Pg ID 53).  At step two, the ALJ found that

plaintiff's degenerative joint disease and obesity were "severe" within the meaning

of the second sequential step.  (Dkt. 10-2, Pg ID 53).  At step three, the ALJ found

no evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  (10-2, Pg ID 55).  The ALJ concluded that plaintiff has

the residual functional capacity to perform medium work except that plaintiff is

limited to only occasionally engaging in the following postural activities: climbing,

balancing, stooping, kneeling, crouching, and crawling.  (Dkt. 10-2, Pg ID 156).

At step four, the ALJ found that plaintiff could perform his past relevant work as a

call center attendant.  (Dkt. 10-2, Pg ID 59).  Thus, the ALJ concluded that plaintiff

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

has not been under a disability from the alleged onset date through the date of the decision.

B.     Plaintiff's Claims of Error

Plaintiff first finds fault with the ALJ's credibility analysis.  Specifically, plaintiff contends that the ALJ failed to fully account for plaintiff's subjective complaints of pain.  In his decision, the ALJ explains, "the claimant's allegations about the severity of his pain stand unsupported by the medical evidence. Objective medical evidence shows only mild degenerative changes in the claimant's ankle, knee and shoulder.  The claimant has not received the type of medical treatment one would expect for a completely disabled individual."  (Tr. 20).  Moreover, the ALJ opined that "this conservative treatment is not consistent with the alleged severity. The claimant did not request stronger pain medication, and never sought alternative treatment, like physical therapy." (R. 20).

Additionally, plaintiff argues that the ALJ failed to properly account for plaintiff's obesity when determining his credibility.  Although the ALJ found that plaintiff's obesity was a severe impairment, and correctly stated that, "the undersigned concludes that the claimant's obesity exacerbates his ability to perform basic work activities," however, in his decision, the ALJ failed to further limit the plaintiff's physical abilities, or find that the presence of obesity added to

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

the plaintiff's overall credibility in regards to his subjective complaints of pain. According to plaintiff, the ALJ failed to discuss the effect of plaintiff's obesity on his other severe impairments, and hence failed to follow 20 C.F.R. 404, Subpt. P, Appendix 1, 1.00Q, and SSR 02-1p.

Plaintiff also contends that the Sixth Circuit has warned ALJs against using conservative treatment as probative evidence of the lack of disabling impairment. In *O'Nan v. Sec'y of HHS*, 1988 WL 26062 (6th Cir. 1988), the plaintiff, like plaintiff in this case, had chronic pain which radiated pain down her lower extremities as the result of a disc herniation. The ALJ in that case rejected the plaintiff's credibility regarding her pain, in part because her doctor recommended conservative treatment rather than surgery. Remanding for benefits, the Sixth Circuit stated, "There can be no question that this lady had a bad back, and we are not prepared to say that she had to submit to the surgeon's knife in order to prove it." *Id.* Plaintiff contends that the same rule should apply to the ALJ in this case. Plaintiff followed the treatment prescribed to him. He argues that the fact that he does not want to take regular narcotic pain medication does not mean that he is not suffering and disabled.

Plaintiff also points out that a closer look at the medical records show that plaintiff complained regularly and consistently about his pain. And, imaging reports provide objective medical evidence to support his allegations of pain.

According to plaintiff, the ALJ overstates his activities, and as he testified, he is

actually very limited in any activities that require physical exertion or ambulation.

Plaintiff's medical evidence documents his on-going complaints of pain. Plaintiff's

records reveal that he began to complain of left knee pain as early as January 2007.

Treatment notes show that he presented with pain in his left knee, which had lasted

for several months.  At that time, he had trouble going up and down stairs and

bending his knee.  (Tr. 194).  Plaintiff continued to complain of worsening knee

pain during his August 5, 2007 appointment. (Tr. 193).  In May of 2008, plaintiff

presented to St. John's Hospital Emergency Room with uncontrollable pain.  He

was diagnosed with sciatica and low back strain and given pain medication.  (Tr.

191).  At plaintiff's follow-up appointment, on May 5, 2008, he reported that his

pain was worse with sitting and standing and that when standing, he experienced

pain that traveled down his leg.  *Id*.  Plaintiff also experiences pain in his feet.  On

November 6, 2008, plaintiff consulted with

a podiatrist.  During this exam, plaintiff explained that he experienced numbness

and pain in both feet.  (Tr. 211).  Further, the pain increased with prolonged

standing and walking as well as repetitive motion.  Plaintiff also conveyed that his

feet swell if he is doing too many activities.  It was during this visit that his doctor

noted, "activities of daily living are limited and his work is affected."  *Id*.  Dr.

Martin, one of plaintiff's treating doctors at the Veterans Hospital, submitted a

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

Medical Source Statement explaining the limitations that plaintiff has with his feet. According to Dr. Martin, plaintiff has "verified bilateral foot osteoarthritis secondary to old injuries and flat feet." (Tr. 318). Dr. Martin also adds that plaintiff has mild degenerative changes in his right foot; a heel spur in his right foot; and deformity in the proximal aspect of the 3rd and 4th metatarsal due to injury. (Tr. 315).

Additionally, plaintiff complains of shoulder pain. On March 24, 2010, plaintiff visited the ER experiencing severe pain and a minimal range of motion in his left shoulder. (Tr. 280). After examination and treatment, plaintiff was diagnosed with shoulder pain and degenerative joint disease. Moreover, imaging performed on March 31, 2010 showed "osteoarthritic changes of the AC joints" and a "small calcific density near the glenoid rim." (Tr. 277).

According to plaintiff, his testimony during the hearing is consistent with the complaints that he makes to his treating doctors. In fact, during the hearing, the ALJ asked plaintiff where his "primary physical pain" was. (Tr. 47). Plaintiff answered that the most pain he experienced was in his foot and that even daily walking is difficult because of it. *Id*. When discussing his knees, plaintiff explained, "In my regular walking pattern, if I walk longer than I should, they really get sore and stiff." (Tr. 41). Moreover, plaintiff testified that if he walks for more than 15 minutes, "my foot begins to hurt, right ankle begins to hurt, and so I

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

try shifting weight and then I make my knees and stuff – so, especially on my left

knee because I'm shifting weight from my – try to shift weight from my right

ankle." *Id*. Additionally, plaintiff testified that he is only able to walk for one city

block before he needs to sit down and rest and is only able to sit for an hour. (Tr.

40-41).

Plaintiff also contends that the ALJ also improperly used plaintiff's daily

activities to attempt to undermine his credibility. In his decision, the ALJ

remarked, "The claimant provided conflicting reports about his daily activities. In

his Function Report, the claimant said he cooks extensive meals, yet testified

that he can only cook meals on "good" days. (Tr. 20). According to plaintiff, the

ALJ mischaracterizes plaintiff's answers on his Function Report. Although

plaintiff reported that he cooks meals a few times a week, he also wrote, "I can

prepare meals, as long as I don't have to stand long hours." (Tr. 141). For

example, plaintiff wrote, "on days when I can walk, I try to make breakfast." (Tr.

139). He also added, "If I stay on my feet for long periods, my foot begins to swell

and have pain." (Tr. 140). Consistent with his other reports, when asked if he does

housework, he replied, "none that requires standing or walking," adding, "my foot

starts to swell and becomes stiff if I stand for long periods of time." (Tr. 141-42).

Thus, plaintiff argues that his disability report is consistent with his pain

complaints to his doctors, and the testimony that he gave during his hearing. Thus,

in accordance with this Court's previous decisions, the ALJ committed reversible error in using plaintiff's minimal daily activities, such as occasional cooking, to find that he was not credible in his subjective complaints.

Plaintiff next argues that the ALJ's error does not constitute "harmless error" because, had the ALJ properly assessed plaintiff's credibility, and incorporated his physical limitations, a finding of "disabled" would have been directed. With plaintiff's age, education, and past work, if the ALJ found that he was capable of performing sedentary work, a finding of "disabled" would be immediately directed by Appendix 2 to Subpart P of Part 404 - Medical Vocational Guidelines (the Grid). During the period of time from his alleged onset of disability until he reached 55, plaintiff argues that Grid Rule 201.14 would lead to a finding of "disabled." After plaintiff reached age 55, Grid Rule 201.06 applies for a directed finding of disability. Thus, a finding by the ALJ that plaintiff was unable to perform the demands of anything more than sedentary, unskilled work, as his medical records support, would result in an automatic finding of disability. Plaintiff argues, therefore, that the ALJ should reverse the decision of the Commissioner and grant plaintiff an immediate award of benefits.

Plaintiff also argues that the ALJ failed to give appropriate weight and consideration to the opinions of plaintiff's treating physician, Dr. Martin, who submitted a Medical Source Statement regarding his physical limitations.

According to plaintiff, the ALJ failed to even mention this report, let alone afford proper weight.  In his report, Dr. Martin noted that the claimant has mild degenerative changes in his right foot with a heel spur; deformity of the left foot following an injury; and minimal osteoarthritic changes in his AC joint.  (Tr. 315).  As a result, Dr. Martin opined that plaintiff would be able to stand/walk less than 2 hours in an 8-hour workday, and sit for about 2 hours in an 8-hour workday.  (Tr. 316).  Additionally, plaintiff would need additional rest breaks during the workday for approximately 20-30 minutes.  (Tr. 317).  According to Dr. Martin, plaintiff would never be able to crouch/squat and only rarely able to stoop (bend).  *Id.*  Lastly, as a result of plaintiff's pain and other impairment-related symptoms, he should be expected to miss more than four days each month.  (Tr. 318).  It appears to plaintiff that the ALJ disregarded Dr. Martin's entire report, and in doing so committed reversible error.  Plaintiff contends that Dr. Martin's report is well-supported by medical records from the Veterans' Hospital which show that claimant reported on-going pain complaints, a decrease in his range of motion, and an inability to stand or sit for any prolonged periods.  Moreover, medical imaging has revealed that plaintiff's pain is caused by several different orthopedic causes.  These limitations are also consistent with plaintiff's testimony during the hearing, and the limitations given on his Function Report.

In this case, the ALJ explained, "the undersigned also considered an opinion

provided by physical therapist, Jon Nettie.  Mr. Nettie is not an acceptable medical source for purposes of establishing the existence of a medically determinable impairment, yet his opinion regarding the claimant's functional capacity must be addressed." (Tr. 20).  Plaintiff points out that Mr. Nettie is a trained professional in the field of Physical Therapy and he is trained in determining a person's maximum physical potential and determining what he or she is able to do, based on those discovered limitations.  According to plaintiff, Mr. Nettie is familiar with plaintiff and is in the best position to determine what he is capable of doing.  Ultimately, the ALJ determined that Mr. Nettie's opinion deserved no weight because it was not supported by the medical records.  Plaintiff contends, however, that Mr. Nettie's report is consistent.  Because of plaintiff's knee, ankle, foot and back problems, Mr. Nettie determined that plaintiff would be unable to squat, crouch, crawl, or stoop.  (Tr. 269).  Further, consistent with plaintiff's complaints, Mr. Nettie reported that when walking, plaintiff would be limited as a result of his antalgic gait; decreased hip flexion; decreased hip extension; decreased knee extension; decreased ankle dorsiflexion; and decreased ankle plantar flexion.  (Tr. 275).  Additionally Mr. Nettie reported that plaintiff would also have difficulty sitting for any increased period of time.  *Id*.

Next, plaintiff argues that the record is devoid of any assessment of plaintiff's mental health impairments - with the exception of an uncontroverted

report given by the Agency's Own Consultative Examiner, Dr. F. Qadir.  However, the ALJ states, "the undersigned declines to give Dr. Qadir's GAF score of 47 any weight because it is also inconsistent with the examination and the objective medical evidence." (Tr. 16).  Plaintiff argues that this is a clear example of the ALJ "picking and choosing" parts of the evidence that only supports his ultimate finding.  This is an improper use of discretion, plaintiff contends, as the ALJ is not a medical professional and is therefore unable to determine if parts of a medical report are correct while others are not.  This determination falls outside of the scope of the ALJ's decision-making power.  According to plaintiff, this error is of particular importance because the ALJ failed to find that plaintiff had any non-exertional impairments that were "severe."  Thus, his RFC was completely devoid of any non-exertional impairments.  Had the ALJ given Dr. Qadir's report proper weight, at a minimum, the ALJ would have been forced to find that plaintiff's mental health constituted a "severe" impairment at Step 2.

C.    The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ reasonably weighed the medical evidence and found plaintiff's allegations were not wholly credible.  (Tr. 21).  The ALJ agreed that plaintiff had significant limitations, but not any more than provided by his residual functional capacity assessment.  (Tr. 18).  The Commissioner contends that the ALJ gave a reasonable explanation based on

relevant factors for partially discounting plaintiff's credibility — notably, because the medical record failed to support his allegations and because of inconsistencies in his testimony and the record evidence (Tr. 18-19) — and the ALJ's explanation was supported by substantial evidence. As such, his credibility finding should not be disturbed.

The ALJ cited several inconsistencies in plaintiff's testimony and the record evidence, which the Commissioner contends is a strong indicator of credibility. The ALJ noted that plaintiff provided inconsistent testimony regarding the circumstances under which he stopped working. (Tr. 20). Some of the testimony suggested that he stopped working for reasons unrelated to his allegedly disabling condition. On his Function Report, a form completed as part of the application process, plaintiff said he stopped working because his employer could no longer accommodate his disability. (Tr. 130). At the hearing, however, he said he was fired. (Tr. 31-32). Plaintiff said there were unfounded allegations made against him and he was let go because he violated the terms of a last-chance agreement. (Tr. 33). Plaintiff also told his primary care physician, Bernard Alper, D.O., that he was fired for an incident with his employer. (Tr. 190, Tr. 288). According to the Commissioner, the ALJ reasonably found plaintiff's inconsistent statements about why he stopped working weighed against his credibility in alleging disability.

The ALJ also found plaintiff's reported daily activities inconsistent with his testimony concerning his functional abilities. (Tr. 20). Contrary to plaintiff's suggestion, the ALJ did not use his daily activities to demonstrate his capacity for work, but rather to highlight inconsistencies in plaintiff's reported functional limitations and his daily activities. As the ALJ noted, plaintiff said in his Function Report that he cooked extensive meals consisting of several courses. (Tr. 141). He also said that his cooking habits had not changed since he allegedly became disabled. (Tr. 141). According to the Commissioner, the ALJ reasonably found plaintiff's statements on the Function Report inconsistent with his testimony that he could only sometimes prepare meals — he had trouble on bad days and he had more bad days than good. (Tr. 42). The ALJ also noted inconsistencies in plaintiff's statements about using a cane. (Tr. 20). Plaintiff told the ALJ that he did not use a cane. (Tr. 49). In the Function Report, however, plaintiff said he used a cane and a brace when he experienced swelling and pain and stiffness in his ankle. (Tr. 145).

In addition to citing inconsistencies, the ALJ also found plaintiff's testimony unsupported by medical evidence. (Tr. 20-21). While objective evidence is not the only factor relevant to determining the credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ when evaluating the credibility of plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical

evidence of this type is a useful indicator to assist us in making reasonable

conclusions about the intensity and persistence of your symptoms and the effect

those symptoms, such as pain, may have on your ability to work.").  Here, plaintiff

alleged that he experienced unbearable pain that rendered him immobile.  (Tr. 41).

The ALJ found such allegations inconsistent

with the objective evidence that showed only mild degenerative changes in his

ankle, knee, or shoulder.  (Tr. 20).  Indeed, as the ALJ noted, an MRI of plaintiff's

right ankle showed only "mild degenerative changes" (Tr. 226); an x-ray of

plaintiff's shoulder showed "minimal osteoarthritic changes as well as a small

calcific density (Tr. 277); and an x-ray of plaintiff's knee showed "early" arthritic

changes.  (Tr. 191).  The ALJ further noted that plaintiff complained of knee pain

in January 2007 and that plaintiff sought no further treatment for his knee pain

despite a referral to an orthopedic specialist.  (Tr. 19, citing Tr. 191).  Plaintiff cites

to no further treatment for his alleged knee pain.

       The ALJ also reasonably found plaintiff's conservative treatment and

statements about pain to treatment providers inconsistent with his allegations of

unbearable pain.  (Tr. 20-21).  The ALJ noted that plaintiff only took aspirin for his

pain.  (Tr. 20).  It was appropriate for the ALJ to consider plaintiff's medication.

*See* Social Security Ruling 96-7p, 1996 WL 374186 (an ALJ must

consider type, dosage, and effectiveness of pain medication).  Moreover, it was

reasonable for the ALJ to find use of only aspirin to be inconsistent with plaintiff's allegations of disabling pain. *See Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) ("Further, Mr. Blacha's use of only mild medication (aspirin) undercuts complaints of disabling pain") (citations omitted); *Winston v. Comm'r of Soc. Sec.*, 1995 WL 478482, at *2 (6th Cir. 1995) (aspirin only undercuts complaint of disabling back pain). The ALJ further noted that plaintiff made only limited references to pain. (Tr. 20). When plaintiff did complain of pain he rated it minimally, at one, two, or three on a ten-point scale. (Tr. 211, 265).

According to the Commissioner, the ALJ's decision demonstrates that he properly evaluated plaintiff's credibility, and provided specific reasons for his finding he was not fully credible. While plaintiff may disagree with the ALJ's credibility assessment, he has failed to demonstrate a basis for overturning the finding, especially in light of the great weight and deference that an ALJ's credibility finding is entitled to on review. Because the ALJ's credibility finding is supported by substantial evidence, the Commissioner argues that it should not be disturbed.

Plaintiff further contests the ALJ's credibility assessment by arguing that his obesity should have altered the ALJ's credibility assessment. According to the Commissioner, the ALJ reasonably evaluated plaintiff's impairments and functional abilities in accordance with Social Security Ruling 02-1p (the "Ruling"),

2000 WL 628049.  The Ruling provides guidance to ALJs concerning the evaluation of obesity in disability claims.  It recognizes obesity as "a risk factor that increases an individual's chances of developing impairments in most body systems" and notes that obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body symptoms."  *Id.* at *3.  Additionally, "obesity may also cause or contribute to mental impairments such as depression."  *Id.*  Despite obesity being a risk factor, the Ruling cautions that it "does not mean that individuals with obesity necessarily have any of these impairments."  *Id.*  The Commissioner contends that plaintiff cannot simply presume limitations based on obesity.  Rather, the Ruling cautions against making such assumptions regarding obesity.  "[W]e will not make assumptions about the severity or functional effects of obesity."  *Id.* at *3.

Here, the Commissioner argues that the ALJ reasonably considered plaintiff's obesity in accordance with the Ruling.  Contrary to plaintiff's suggestion, the Ruling does not mandate a particular mode of analysis concerning obesity.  The Ruling only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations.  SSR 02-1p (the "Ruling"), 2000 WL 628049 at *3, 5.  "It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."  *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12

(6th Cir. 2008).  The Sixth Circuit has discounted procedural arguments similar to plaintiff's.  *Id.*  An ALJ need only "consider" obesity and its possible effects.  *Id.*  According to the Commissioner, the ALJ did just that, providing a lengthy explanation of his consideration of obesity and the effect it may have had on plaintiff.  (Tr. 19).  Ultimately, the ALJ reasonably found the record failed to support greater functional limitations.

The Commissioner urges the Court to reject plaintiff's argument that if the ALJ had found plaintiff only capable of sedentary work, the Medical Vocational Guidelines (20 C.F.R. Part 404, Subpt. P, Appx 2) would have directed a finding of disabled.  The Commissioner contends that the ALJ decided this matter at step four of the sequential analysis, finding that plaintiff could return to his past work as a call center attendant.  (Tr. 22).  It is uncontested that the call center attendant position is performed at the sedentary level.  (Tr. 22, 49).  However, when a case is decided at step four of the sequential analysis, the Medical Vocational Guidelines do not apply.  *See* 20 C.F.R. Part 404 Subpt. P. App'x 2 § 200.00(a).  The Medical Vocational Guidelines are only considered when a claimant is unable to perform his or her past work.  *Id.*  Therefore, the Commissioner maintains that even if plaintiff were limited to sedentary work, a finding of disabled would not be directed as he could return to his past work.

The Commissioner also asserts that the ALJ reasonably weighed the opinion

evidence in this case.  Three physicians and a physical therapist submitted opinion evidence concerning plaintiff's physical capabilities — Muhammed Ahmed, M.D., S. Maitra, M.D., Anthony Martin, M.D., and Jon Nettie.  A psychiatrist and a psychologist provided opinion evidence concerning Plaintiff's mental capabilities — F. Qadir, M.D. and Edward Czarnecki, Ph.D.  The ALJ gave significant weight to the opinion of reviewing state agency physician, Dr. Ahmed.  After reviewing the medical evidence, Dr. Ahmed opined that plaintiff's impairments would not limit his ability to perform work-related activities for eight-hours a day and 40 hours per week on a sustained basis.  (Tr. 237).  Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about six hours per day, and sit for six hours per day.  (Tr. 231).  He also submitted that the claimant should only occasionally engage in climbing, balancing, stooping, crouching, and crawling.  (Tr. 232).  It was reasonable for the ALJ to rely on Dr. Ahmed's opinion because he is a highly qualified expert.  The ALJ's opinion is further supported by the opinion of Veteran's Administration physician, Dr. Maitra, who indicated that plaintiff did not have an impairment that affected his daily activities.  (Tr. 212).  According to the Commissioner, plaintiff incorrectly suggests that Dr. Maitra opined that plaintiff's "activities of daily living were limited and his work was affected." (Pl. Br. 3, citing Tr. 211).  That statement was not made by Dr. Maitra, but was a subjective complaint made by plaintiff as it was included in the portion

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

of the report dedicated to the patient's complaints.  (Tr. 211).  The Commissioner

maintains that Dr. Maitra actually reached the exact opposite conclusion and found

"no impairment of daily occupational activities due to [Plaintiff's] above listed

complaints regarding his feet." (Tr. 212).

     Plaintiff's primary care physician, Dr. Martin, submitted an undated

Physical Residual Functional Capacity Questionnaire.  (Tr. 261-64; 315-18).

Contrary to Plaintiff's suggestion, the ALJ did not "disregard[] Dr. Martin's entire

report."  Rather, the ALJ found Dr. Martin's opinion unsupported and inconsistent

with the record evidence.  (Tr. 19).  Dr. Martin diagnosed plaintiff with mild

degenerative changes in his right foot with a heel spur, a deformity in his toes on

his left foot, and minimal osteoarthritic changes in his shoulder.  (Tr. 261).  He

opined that plaintiff would be able to stand/walk less than two hours in an

eight-hour day and sit for two hours in an eight hour day.  (Tr. 261).  The ALJ

reasonably found Dr. Martin's opinion was not supported and was inconsistent

with the medical record.  For example, the ALJ noted that Dr. Martin opined that

plaintiff could walk less than one block (Tr. 262), however, Plaintiff told Dr.

Martin that he could walk for a mile.  (Tr. 284, 288).  The ALJ also noted that there

was no basis for Dr. Martin's opinion that plaintiff could sit for only one hour.  (Tr.

19, citing Tr. 262).  According to the Commissioner, there is nothing about mild

ankle degeneration, an old foot injury, or minimal shoulder arthritis that would

support a limitation to an hour of sitting.  Dr. Martin's physical examination

findings similarly did not support the extreme limitations contained within his

opinion.  An examination of plaintiff's extremities showed no cyanosis, clubbing,

or edema; normal reflexes; and normal muscle strength.  (Tr. 289). It was

reasonable for the ALJ to find such physical examination findings inconsistent

with an extreme opinion that Plaintiff could stand for no more than thirty minutes

at a time.  (Tr. 19, 289).

The Commissioner also contends that the ALJ also reasonably gave little

weight to the opinion of physical therapist, Jon Nettie.  Plaintiff concedes that a

physical therapist is not an acceptable medical source under the regulations.

Although Mr. Nettie was not an acceptable medical source, the ALJ nonetheless

appropriately considered his opinion concerning plaintiff's residual functional

capacity.  (Tr. 20).  Among other opinions, Mr. Nettie opined that plaintiff was

incapable of sustaining light level work for an eight-hour day in a 40-hour work

week.  (Tr. 265).  The ALJ reasonably discredited Mr. Nettie's opinion because it

was inconsistent with plaintiff's reported pain level to Mr. Nettie.  (Tr. 19).

Plaintiff rated his pain at only three on a ten-point scale.  (Tr. 265).  The ALJ

further noted the mild or minimal objective imaging studies were inconsistent

with Mr. Nettie's opinion.  (Tr. 19).  In addition, plaintiff's argument ignores the

remainder of Mr. Nettie's opinions, including his opinions that plaintiff was

capable of sitting and standing frequently (i.e., more than 66 percent of a workday), walking occasionally (i.e., up to 33 percent of a workday), and occasionally lifting more than 35 pounds.  (Tr. 268-69).

The Commissioner also contends that the ALJ reasonably gave significant weight to the opinion of reviewing state agency psychologist, Dr. Czarnecki.  After reviewing the medical evidence, Dr. Czarnecki opined that plaintiff had no severe mental impairment or functional limitations.  (Tr. 242, 254). To support his opinion, Dr. Czarnecki noted that plaintiff's primary care physician referred him to Eastwood Clinic for mental health treatment.  (Tr. 254).  Plaintiff went once and was diagnosed with mixed adjustment disorder, but did not receive any further mental health treatment (Tr. 254).  Dr. Czarnecki noted that a recent depression screening was performed at the Veteran's Administration.  (Tr. 254).  Dr. Czarnecki also noted that the consultative mental examination was not consistent with severe depression (Tr. 254).  The Commissioner also maintains that it was reasonable for the ALJ to rely on Dr. Czarnecki's opinion because he is a highly qualified expert. *See* 20 C.F.R. § 404.1527(f)(2)(I); SSR 96-6p, 1996 WL 374180.

In November 2009, plaintiff underwent a consultative mental status examination performed by psychiatrist, Dr. Qadir.  (Tr. 238-40).  Dr. Qadir assigned plaintiff a global assessment of functioning (GAF) score of 47, indicating serious symptoms or serious impairment in social, occupational, or school

functioning.  (Tr. 240).  According to the Commissioner, the ALJ reasonably declined to give the GAF score any weight because it was not sufficiently supported.  (Tr. 16).  Plaintiff incorrectly suggests that discrediting the GAF score demonstrated improper "picking and choosing" by the ALJ.  Contrary to plaintiff's suggestion, a GAF score is not raw medical data.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 503 (6th Cir. 2006).  Rather, a GAF score is "merely a subjective opinion" and is "not a rating of [a claimant's] ability to work."  (Tr. 29); *see Kennedy v. Astrue*, 247 Fed.Appx. 761, 766 (6th Cir. 2007).  In direct contradiction to plaintiff's argument that an ALJ must explain why he discounted a GAF score, the Sixth Circuit has recognized that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."  *Kornecky*, 167 Fed.Appx. at 511.

The Commissioner next contends that plaintiff's argument that the ALJ should have found a severe mental impairment at step two of the sequential evaluation is ultimately a red herring.  According to the Commissioner, it makes little difference whether plaintiff's alleged mental impairments were a severe impairment because the ALJ considered plaintiff's mental status when evaluating his residual functional capacity.  *See Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007), quoting *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987) ("Because the ALJ considered these impairments when determining Fisk's residual

functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two."). Under similar circumstances, the Sixth Circuit found that, once an ALJ determined that there was at least one severe impairment, it was "of little consequence" whether the ALJ characterized any other alleged impairment as severe or not severe. *Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003). Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, at the remaining steps of the evaluation process. 20 C.F.R. § 404.1545(e). Here, the Commissioner points out that the ALJ provided a lengthy discussion of the evidence relating to plaintiff's mental health. (Tr. 16-17). Moreover, the ALJ's analysis was supported by the opinion of state agency reviewing psychologist, Dr. Czarnecki who opined that plaintiff has no severe mental impairment or any work-related mental functional limitations. (Tr. 17, citing Tr. 242, 254). Contrary to plaintiff's unsupported suggestion that he had problems with concentration or other mental limitations, plaintiff did not identify any mental limitations in function report submitted to the agency. (Tr. 145). He said he could pay attention for however long was needed, he could finish what he started, he followed written and spoken instructions "very well," and he handled stress and changes in routine "pretty well." (Tr. 145-46). While plaintiff may disagree with the ALJ, the

Commissioner contends that the ALJ's findings were well within the zone of reasonable choices.  *See Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986).  The substantial evidence standard presupposes that there is a zone of choice within which the decision maker can go either way, without interference by the courts. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  Because the ALJ made a reasoned and reasonable decision based on substantial evidence, the Commissioner asserts that the ALJ's decision should be affirmed.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her

past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.     <u>Analysis and Conclusions</u>

          1.     Treating physician evidence/credibility

While plaintiff incorrectly contends that the ALJ did not even mention Dr. Martin's opinions, the undersigned agrees with plaintiff that the ALJ failed to give sufficiently good reasons for not giving controlling weight to plaintiff's treating physician.  As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id*. at 406, citing § 404.1527(d)(2).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."   Courts have remanded the Commissioner's decisions when they

have failed to articulate "good reasons" for not crediting the opinion of a treating

source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)

("We do not hesitate to remand when the Commissioner has not provided 'good

reasons' for the weight given to a treating physician's opinion and we will continue

remanding when we encounter opinions from ALJ's that do not comprehensively

set forth the reasons for the weight assigned to a treating physician's opinion.").

The ALJ's analysis of Dr. Martin's opinions is as follows:

> Dr. Anthony Martin evaluated the claimant's residual
> functional capacity, based on this diagnoses and the
> claimant's right ankle degeneration, however, his opinion
> that the claimant can only sit for one hour and stand for
> 30 minutes is unsupported by the medical evidence (Id. at
> 3). He opined the claimant could walk less than one city
> block. At another exam only a few days later, the
> claimant reported that he could walk a mile (Exhibit 10F,
> page 25).

(Dkt. 10-2, Pg ID 57). The ALJ cites only two pieces of evidence from the record

for his conclusion that, apparently, no weight should be given to Dr. Martin's

opinion: an xray of plaintiff's left shoulder and claimant's self-report that he could

walk one mile. The undersigned finds this analysis wholly insufficient.

Moreover, if the ALJ determined that plaintiff's treating physician's opinion

should not be given controlling weight despite the medical evidence in support,

"the ALJ must still determine how much weight is appropriate by considering a

number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Martin's opinion was not entitled to controlling weight, it was still entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Martin's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). Thus, the undersigned concludes that a remand is necessary so the ALJ may re-evaluate the treating physician opinion and supporting treatment evidence.

A related matter is the treatment of the physical therapist's opinion and tests. As the ALJ correctly noted, the opinion of a physical therapist is not considered an

"acceptable medical source" for determining the existence of an impairment, but should be considered in evaluating the RFC.  Stated another way, such evidence may be used to determine the *severity* of an impairment.  20 C.F.R. § 404.1513(d).  Pursuant to § 404.1513(d), the FCE of the physical therapist may be considered by the ALJ in determining the severity of the plaintiff's medically determined disability, and pursuant to SSR 06-03p, where appropriate, may even be given more weight than the opinion of the plaintiff's own treating physician.  *Rigby v. Astrue*, 2009 WL 3048668, *7 (M.D. Tenn. 2009); *Madise v. Astrue*, 2009 WL 3078294, *11 (S.D. Ala. 2009).  Some courts also distinguish between the type of FCE performed; finding those based on physical performance tests to be more persuasive than those based just on observations and subjective reports.  *See e.g.*, *Crites v. Barnhart*, 2006 WL 6049478, *2 (W.D. Wisc. 2006).

In this case, Mr. Nettie performed a Physical Work Performance Evaluation™, which apparently involved multiple hours of physical testing.  (Dkt. 10-7, Pg ID 308-319).  However, Mr. Nettie merely concluded that plaintiff was unable to perform work in the "light" category, while the ALJ concluded that plaintiff was able to perform his past work as call center attendant, which falls into the sedentary category.  Thus, in the view of the undersigned, it is not clear how

the ALJ's determination to give this opinion little weight affected the outcome.[2]

That is, even if the ALJ had given this opinion controlling weight, it would not

have changed the conclusion that plaintiff could perform his past work as a call

center attendant.  Thus, the undersigned finds no significant error in the ALJ's

treatment of this opinion.

### 2. Mental impairment

In the view of the undersigned, Dr. Czarnecki's opinion is well-supported by

the record evidence and provides a reasonable basis for the ALJ to conclude that

plaintiff does not have a severe mental impairment.  After reviewing the medical

evidence, Dr. Czarnecki opined that plaintiff had no severe mental impairment or

functional limitations.  (Tr. 242, 254).  To support his opinion, Dr. Czarnecki noted

that plaintiff's primary care physician referred him to Eastwood Clinic for mental

health treatment.  (Tr. 254).  Plaintiff went once and was diagnosed with mixed

adjustment disorder, but did not receive any further mental health treatment.  (Tr.

254).  Dr. Czarnecki also noted that the consultative mental examination was not

consistent with severe depression.  (Tr. 254).  And contrary to plaintiff's argument

regarding the GAF score of Dr. Qadir, the Sixth Circuit has recognized that "we

---

[2]  Similarly, the undersigned is not persuaded by plaintiff's "Grid" argument.  Given the
ALJ's conclusion that plaintiff could perform his past work, even though his past work is
sedentary, the Grid does not come into play.  *See e.g.*, *Hambrick v. Astrue*, 2012 2597500, *5
(E.D. Tenn. 2012) ("[T]he ALJ concluded Plaintiff was not disabled at step four of the sequential
evaluation process so the Grid rules are inapplicable and not an issue."); *Boggess v. Astrue*, 2010
WL 2010811 (E.D. Tenn. 2010) (same).

are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006). In the view of the undersigned, Dr. Czarnecki's opinion is well-supported by the record and plaintiff offers no basis for the undersigned to find fault with the ALJ's analysis of plaintiff's mental impairment.

The undersigned also agrees with the Commissioner that it makes little difference whether plaintiff's alleged mental impairments were a severe impairment because the ALJ considered plaintiff's mental status when evaluating his residual functional capacity. *See Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007), quoting Maziarz v. Sec'y of HHS, 837 F.2d 240, 244 (6th Cir. 1987) ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two."). In this case, the ALJ extensively discussed plaintiff's mental health and the ALJ's analysis was supported by the opinion of state agency reviewing psychologist, Dr. Czarnecki who opined that plaintiff has no severe mental impairment or any work-related mental functional limitations. (Tr. 17, citing Tr. 242, 254). Again, the undersigned finds no basis for disturbing the ALJ's findings in this regard.

3.    Credibility

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

The undersigned finds no errors in the ALJ's credibility analysis for the reasons cited by the Commissioner. However, because this matter should be remanded for further consideration of the treating physician's opinions, the ALJ should also reconsider plaintiff's credibility, which is, at least in part, dependent on assessment of the medical opinion evidence.

### 4. Obesity

Obesity, by itself, does not constitute a disability and is not qualified as a "listed impairment." SSR 02-1p, 2000 WL 628049, at *1. "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2008). Accordingly, the Sixth Circuit has held compliance with SSR 02-1p only requires demonstration that the ALJ "considered" obesity. *See id.* ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."). Further, the administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition. *Coldiron v. Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7 (6th Cir. 2010), citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). No treating physician offered any opinion that plaintiff's obesity caused any additional

limitations and tellingly, plaintiff offers no evidence that his obesity caused any additional functional limitations beyond those found by the ALJ.  Accordingly, plaintiff's claim of error should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that defendant's motion for summary judgment be **GRANTED IN PART**, that the findings of the Commissioner be **REVERSED IN PART**, and that this matter be remanded for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 12-13268

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 14, 2013                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

### <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2013, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: <u>Frederick J. Daley, Jr., Kelie C. Schneider, William
W. Watkinson, Jr., Andrew J. Lievense, AUSA, and Meghan O'Callaghan, Social
Security Administration</u>.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov